**John R. FRANCO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18546.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 22, 1964.

Decided Dec. 17, 1964.

Petition for Rehearing en Banc Denied Feb. 16, 1965.

Edgerton, Senior Circuit Judge, dissented.

5. See Note 1 *supra*.

1. We noted in our order of dismissal that copies of our March 1 order had been sent by certified mail to appellant at four

Mr. Rourke J. Sheehan (appointed by this court), Washington, D. C., for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Daniel A. Rezneck, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant Franco was convicted in the District Court of "bail jumping" in violation of 18 U.S.C. § 3146, and seeks reversal.

The background is this: Franco was convicted of mail fraud in the District Court in 1962. He appealed to this court, and we admitted him to bail pending appeal in the amount of $3,000. He executed a bail bond pledging that he would surrender himself if the judgment was affirmed, the appeal dismissed, or a new trial granted. He thus obtained his liberty in the summer of 1962. On December 4, 1962, the Government moved to dismiss his appeal on grounds not relevant here. By order dated March 1, 1963, this court directed the United States Attorney to serve appellant Franco with a copy of the motion to dismiss. Shortly thereafter the Government filed a certificate of service showing that copies of the motion had been mailed to appellant at two different addresses in Florida. The material was returned by the Post Office, marked "unknown." On April 4, 1963, we dismissed the appeal and revoked appellant's bail.[1] On April

addresses in Miami and Miami Beach (including the two listed in the Government's certificate of service) "which [addresses] appear in the records in this case as having been furnished by ap-

5, 1963, our order was filed in the District Court and on April 9 was presented to the Chief Judge in open court. Appellant Franco did not appear. The Chief Judge declared a forfeiture of his bond and caused a bench warrant to be issued for his arrest. Later, on June 24, 1963, under circumstances to be described presently, appellant was apprehended in New Jersey and was returned to the District of Columbia. On July 9, 1963, the District Court granted a motion by appellant's surety on the bail bond (an insurance company) to set aside the forfeiture of the bond and to remit the penalty thereunder.[2] On August 12, 1963, an indictment was filed in the District Court charging Franco with the crime of bail jumping. After a trial before a jury he was found guilty and sentenced to a term of imprisonment. This appeal followed.

Appellant's principal argument is that he was not properly convicted of failing to surrender himself after forfeiture of his bail bond because the forfeiture had been set aside prior to his indictment. He urges what we consider a strained construction of the governing statute, 18 U.S.C. § 3146, which provides:

"*Whoever*, having been admitted to bail for appearance before any United States commissioner or court of the United States, *incurs a forfeiture of the bail and wilfully fails to surrender himself within thirty days following the date of such forfeiture, shall*, if the bail was given in connection with a charge of felony or pending appeal or certiorari after conviction of any offense, *be fined* not more than $5,000 *or imprisoned* not more than five years, or both; or, if the bail was given in connection with a charge of committing a misdemeanor, or for appearance as a witness, be fined not more than $1,000 or imprisoned not more than one year, or both.

"Nothing in this section shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt." (Emphasis supplied.)

The gist of appellant's argument is that once the District Court had "set

---

pellant" and that "each copy of said order was returned to the Clerk with the notation 'unknown' on each envelope." The order continued:

"Now, THEREFORE, on consideration whereof, it is

"ORDERED by the court that the order entered herein on July 27, 1962, admitting appellant to bail pending appeal is hereby revoked, and this appeal is hereby dismissed without prejudice to reinstatement upon a proper showing by appellant, and it is

"FURTHER ORDERED by the court that the Clerk is hereby directed to issue a certified copy of this order to the District Court forthwith."

2. The court's order was as follows:
"In the United States District Court
for the District of Columbia
Criminal No. 429–61
UNITED STATES
v.
JOHN R. FRANCO
*Order Setting Aside Forfeiture of
Bail Bond, and for Remitter
of Penalty*
"Upon consideration of the oral motion of the surety to set aside the forfeiture of the bond in the above-entitled case and for remitter of the penalty thereunder, and after hearing upon the merits, it is by the Court this 9th day of July, 1963,

"ORDERED, That the forfeiture of the bail bond in the sum of Three Thousand Dollars ($3,000.00), forfeited on the 9th day of April, 1963, be and is hereby set aside; and it is further

"ORDERED, That the Clerk of this Court pay to Harold F. Hawken, attorney for the United Bonding Insurance Company, the sum of Three Thousand Dollars ($3,000.00), the surety having paid the United States Marshal his costs of returning the defendant to the District of Columbia from Newark, New Jersey, payment to be made to the said Harold F. Hawken, attorney for the United Bonding Insurance Company, forthwith and upon the entry of this Order.

"CHARLES F. McLAUGHLIN,
"*Judge.*
"No objection.
"F.G.SMITHSON,
"*Asst. U. S. Atty.*"

aside" the forfeiture of the bail bond, the forfeiture "was annulled and made void, just as if it had never been." This language is to be found in Migdol v. United States, 298 F.2d 513, at 516, 91 A.L.R.2d 1283 (9th Cir. 1961), a case somewhat similar to the one at bar. But that case is to be distinguished on at least one score, namely, that there the motion to set aside the forfeiture was made by the accused himself rather than, as here, by the bonding company. And, with due respect to the Ninth Circuit, the reasoning upon which it based its conclusion is not satisfactory to us.

The language of the statute refers to a person who has been admitted to bail and who "[1] incurs a forfeiture of the bail and [2] wilfully fails to surrender himself within thirty days following the date of such forfeiture." In the present case, appellant Franco incurred a forfeiture of his bail on April 9, 1963.[3] He took no action seeking reconsideration or review of the District Court's order of forfeiture.

The District Court's subsequent action setting aside the forfeiture at the instance of the insurance company did not dispense the appellant from the consequences of his failure to surrender himself. The purpose of the statute is to provide an additional deterrent to jumping bail. In order to serve this purpose, the statute prescribes a penalty if the bailed defendant wilfully fails to surrender himself within thirty days of forfeiture. Operation of the statute is tied to forfeiture, which occurs upon "breach of condition of a bond." FED.R.CRIM.P. 46(f) (1).[4] On the other hand, a forfeiture may be set aside "if it appears that justice does not require the enforcement of the forfeiture." FED.R.CRIM.P. 46(f) (2). If, then, a bailed defendant was returned a few days after forfeiture by the bondsman, following diligent effort, justice would not ordinarily require that the forfeiture be maintained.[5] But the consideration of justice governing the setting aside of the forfeiture is wholly unrelated to the propriety of punishing the bailed defendant for bail jumping. To make the operation of the statute turn on considerations of justice to the surety introduces an element of chance into the system that Congress could not be presumed to have intended. The purpose of the statute is best effectuated by giving the statute its natural meaning and recognizing that the setting aside of a forfeiture does not make the incurring of the forfeiture less culpable. While a similar result could perhaps be achieved by the court's noting on the order setting the forfeiture aside that the order is not to affect a possible

---

3. For purposes of Section 3146 forfeiture should be deemed "incurred" when the forfeiture is declared under Rule 46 (f) (1) of the Federal Rules of Criminal Procedure. See note 4, *infra*. It may also be that a forfeiture in this case was "incurred" within the meaning of Section 3146 when this court revoked appellant's bail on April 4. But under the circumstances here it is unnecessary to pass on this question. Entry of judgment under Rule 46(f) (3) may or may not prove necessary to enforce liability on the bond. In the present case, the record contains no indication that a judgment of forfeiture was entered. Apparently the surety paid voluntarily. The time when judgment is entered, if indeed it is entered at all, has nothing to do with the behavior to which the statute is addressed—bail jumping. The lapse of thirty days from declaration of forfeiture is sufficient to establish the offense. Contrast Migdol v. United States, *supra*, 298 F.2d 513, 515–516 (9th Cir. 1961).

4. Rule 46(f) provides in pertinent part:
"(f) *Forfeiture*.
"(1) *Declaration*. If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.
"(2) *Setting Aside*. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

5. In the present case, the court undoubtedly considered that the interests of justice did not require enforcement of the forfeiture against the surety because appellant by that time had been apprehended and because the surety had paid the cost of returning him to the District of Columbia.

Section 3146 indictment, there is no indication that this is contemplated in the statutory scheme, or even that it is proper.

The adoption of any such construction as appellant urges would have serious consequences for the public, for persons seeking release on bail, and for their sureties as well. If remission of a forfeiture at the instance of a surety produces the result for which appellant contends, either remissions would rarely be granted or the statutory deterrent to bail jumping would be rendered much less effective. Appellant's reading of Section 3146 would create an unnecessary conflict between the policy of Rule 46(f) (2), which encourages the setting aside of forfeitures if their enforcement is not required in the interest of justice, and Section 3146, which is intended to punish bail jumpers. Both policies will be furthered if the setting aside of the forfeiture is not regarded as barring a prosecution under Section 3146.

In addition, the position contended for by appellant would give the District Judge the extraordinary power to decide whether or not a bail jumper should be liable to prosecution under Section 3146. By remitting a forfeiture, the Judge could in effect grant a pardon to the bail jumper. We have no reason to suppose that Congress intended to confer this unique dispensing power on the District Court, in the absence of an express statement to that effect.

■ Appellant also challenges the sufficiency of the Government's case as to the second element of the offense, arguing that he did not *wilfully* fail to surrender himself within thirty days following the date of the forfeiture. The contention is made that he cannot legally be convicted because he was given no notice of the forfeiture and had no knowledge of it. However, the fact remains that appellant failed to surrender himself within thirty days of his receiving *actual knowledge* of the revocation of his bail. After the issuance of the bench warrant for appellant's arrest on April 9, the Federal Bureau of Investigation began to search for him. On April 30, 1963, an agent of the Bureau located appellant's wife in an apartment in New York City. He testified that he told her that a warrant had been issued for appellant's arrest and that his bail bond had been revoked. He asked her to have appellant phone him at a given number. Appellant did not do so. Appellant's wife's apartment was kept under surveillance for more than a month thereafter. The agent was unable, however, to apprehend appellant. On June 23 the agent followed appellant's wife to Jersey City, New Jersey, and succeeded in locating appellant in a hotel there, registered under an assumed name. Appellant was arrested at that hotel on June 24.

Appellant took the stand in his own defense. He admitted that on or about April 30, 1963 his wife had told him about the visit of the FBI agent and had repeated what the agent had said about the dismissal of the appeal and the revocation of appellant's bond. But appellant did not contact the agent. The statute does not state that the defendant must have knowledge that the forfeiture has taken place. Since the purpose of the statute is to encourage persons on bail to meet the obligations in their bonds, notice to the person bailed of his obligation to appear should be sufficient. Notice of the revocation, in this case, informed appellant of his obligation to surrender himself. The terms of his bond clearly stated that he had such a duty, in the event of revocation. The information given by the agent also put him on inquiry about forfeiture of his bond.

Appellant argues that his interpretation of the Rules of this Court led him to believe, in good faith, that his actions had suspended his obligation to surrender himself, and that this good faith belief made his failure to surrender nonwilful. His theory is as follows: Appellant telephoned the offices of the Clerk of this court and the United States Attorney in the District of Columbia, on or about May 1, 1963. In these long distance telephone conversations he raised

the possibility of having his appeal reinstated, and on May 31, 1963, he filed a formal motion to reinstate the appeal and to vacate the order revoking his bond.[6] Appellant testified at his trial that he believed that his conversations by telephone with the Clerk's office and with the United States Attorney's office amounted to a de facto stay of our order and hence that he had no obligation to surrender himself.[7] However, he admitted that he was not at that time aware of the provisions of this court's rules regarding stays or petitions for rehearing and that he knew when he was released on bond in 1962 that if the appeal was dismissed it would be his duty to surrender. The jury might well have concluded from this testimony and appellant's evasive behavior from April 30 to June 24 that he was not really relying on this legal theory, but was deliberately seeking to avoid a recognized legal obligation. Under these circumstances, we think the jury had before it ample evidence from which it could conclude that appellant wilfully failed to make a voluntary surrender pursuant to the obligation imposed by the terms of his bond. The second element of the statutory offense was thus satisfied.

For these reasons the judgment of conviction must be

Affirmed.

EDGERTON, Senior Circuit Judge (dissenting).

Appellant was admitted to bail pending appeal from a conviction of mail fraud. On April 4, 1963, we dismissed the appeal and revoked the bail. On April 9, 1963, appellant not having surrendered, the District Court declared his bail forfeited. He was arrested on June 24, 1963.

"Whoever, having been admitted to bail * * * incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such forfeiture, shall" be fined or imprisoned as provided. 18 U.S.C. § 3146 ("Jumping bail"). But the District Court may "direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." F.R.CRIM.P. Rule 46(f) (2). Appellant's surety moved that the forfeiture be set aside and on July 9, 1963, the District Court "ORDERED, That the forfeiture of the bail bond in the sum of Three Thousand Dollars ($3,000.00), forfeited on the 9th day of April, 1963, be and is hereby set aside; * * *" The order imposed no condition. It was absolute. It subtracted nothing by adding "and it is further ORDERED, That the Clerk of this Court pay to Harold F. Hawken, attorney for the United Bonding Insurance Company, the sum of Three Thousand Dollars ($3,000.00), the surety having paid the United States Marshal his costs of returning the defendant to the District of Columbia from Newark, New Jersey * * *" Several weeks later, on August 12, 1963, appellant was indicted on a charge of jumping bail. He was convicted and brought this appeal.

In Migdol v. United States, 298 F.2d 513, 91 A.L.R.2d 1283 (9th Cir. 1961), the facts were essentially similar. There, as here, the District Court imposed no condition in its order setting aside a forfeiture of bail. There the appellant Migdol and not his surety had moved that the forfeiture be set aside, but the Court of Appeals for the Ninth Circuit attached no importance to this fact. It held that "When the forfeiture was set aside, it was annulled and made void, just as if it had never been", and therefore could not be "used as the foundation for a charge of bail jumping." The court observed that if the trial judge had "not intended appellant to enjoy the benefits of the setting aside of the forfeiture, he was authorized by Rule 46(f) (2) to

6. Appellant did not appear at the hearing on the motion, and it was denied.

7. There was no evidence that during these telephone conversations appellant revealed his whereabouts, or offered to surrender.

impose conditions, one of which could have been that his order operate only for the benefit of the sureties, and not appellant." 298 F.2d at 516.

Despite the discretion Rule 46(f) (2) gives district courts to impose conditions in setting aside forfeitures, this court questions whether it would have been proper for the District Court expressly to impose a condition that its order was "not to affect a possible Section 3146 indictment". (P. 920.) Yet this is the very condition this court decides is inherent in orders setting aside forfeitures of bail even though the orders do not express it. If this construction of such orders is correct, expressing the condition in the orders would do no harm and would serve the useful purpose of promoting clarity and certainty. And if, as I think, this court's construction of such orders is not correct, they must express the condition if they are not to benefit the defendant as well as the surety.

Nothing in Rule 46(f) or the District Court's order suggests to my mind that the words "set aside" are used in a restricted sense which excludes the defendant from the benefit of the order. I think the District Court's order, absolute in form, should be construed as absolute in substance. I think this construction would not, as the court suggests, "have serious consequences for the public, for persons seeking release on bail, and for their sureties as well." (P. 921.) I do not think it would follow from this construction that "either remissions would rarely be granted or the statutory deterrent to bail jumping would be rendered much less effective." (P. 921.) Remissions of bail forfeitures could be freely granted without rendering the statutory deterrent to bail jumping less effective by simply including in the order setting aside the forfeiture the condition that it is to operate for the benefit of the surety only or, in other words, is not to prevent a possible § 3146 indictment. And if on occasion the court thinks it desirable to protect the defendant as well as his surety from the consequences of the forfeiture, the court need only enter an unqualified order setting aside the forfeiture, as it did in this case.

This prosecution seems to me not essentially different from one based on a statute in effect at the time a defendant acted but afterwards repealed. In a unanimous opinion by Chief Justice Hughes, the Supreme Court said in 1934: "The continuance of the prosecution of the defendants after the repeal of the Eighteenth Amendment * * * would involve an attempt to continue the application of the statutory provisions after they had been deprived of force. This consequence is not altered by the fact that the crimes in question were alleged to have been committed while the National Prohibition Act was in effect. * * * In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose * * * In Yeaton v. United States, 5 Cranch 281, 283 [3 L.Ed. 101], * * * Chief Justice Marshall said that 'it has long been settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute.' * * * In United States v. Tynen, 11 Wall. 88, 95 [20 L. Ed. 153], the Court thus stated the principle applicable to criminal proceedings: 'There can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offence be at the time in existence. By the repeal the legislative will is expressed that no further proceedings be had under the Act repealed.'" United States v. Chambers, 291 U.S. 217, 222–223, 54 S.Ct. 434, 78 L.Ed. 763 (1934). Similarly in the present case, by setting aside the forfeiture the judicial will was expressed that no further proceedings be had under the forfeiture. Since the forfeiture, like the statute, is no longer in effect, like the statute it can no longer be enforced. The question who asked the court to set aside a forfeiture seems to me no more

relevant than the question who asked the legislature to repeal a statute.

I do not reach the question, which I should probably answer in the negative, whether it appeared that the appellant "willfully" failed to surrender within thirty days following the date of the forfeiture. I think the conviction should be reversed and the indictment dismissed because the forfeiture was set aside before the indictment was returned.