UNITED STATES of America, Appellee,

v.

Dennis Richard HALL, Defendant-Appellant.

No. 442, Docket 28797.

United States Court of Appeals Second Circuit.

Argued April 21, 1965.

Decided June 9, 1965.

Hays, Circuit Judge, dissented.

Louis A. Craco, New York City (Anthony F. Marra, The Legal Aid Society, Michael G. Marks, New York City, on the brief), for defendant-appellant.

Michael F. Armstrong, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, Bernard W. Nussbaum, Asst. U. S. Atty., on the brief), for appellee.

Before KAUFMAN, HAYS and ANDERSON, Circuit Judges.

KAUFMAN, Circuit Judge:

Advancing a novel theory of the proof required under the federal bail-jumping statute, 18 U.S.C. § 3146,[1] Dennis Richard Hall appeals from a judgment of conviction entered after a jury found him guilty of that offense. The one-count

---

1. The statute provides: "Whoever, having been admitted to bail for appearance before any United States commissioner or court of the United States, incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such forfeiture, shall, if the bail was given in connection with a charge of felony or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or, if the bail was given in connection with a charge of committing a misdemeanor, or for appearance as a witness, be fined not more than $1,000 or imprisoned not more than one year, or both.

"Nothing in this section shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt."

indictment, framed in terms of the statutory language, alleged that Hall, on July 11, 1963, forfeited bail of $15,000 posted in connection with a felony charge and, thereafter, willfully and knowingly failed to surrender himself within thirty days following the date of forfeiture. Appellant was sentenced to five years' imprisonment.[2] We affirm, finding (a) no error in the charge or supplemental instructions, (b) more than sufficient evidence to convince the jury beyond a reasonable doubt that the failure to surrender was knowing and willful, and (c) no prejudicial error, under the circumstances, in requiring appellant's counsel to testify briefly as a witness for the prosecution.

As is so often the case when willfulness is the critical element in a criminal trial, the basic evidentiary facts are uncontroverted and the dispute focuses on the reasonable inferences they support. Hall was indicted, on May 28, 1962, for transporting and conspiring to transport stolen securities in interstate commerce, 18 U.S.C. §§ 2314, 371. He signed and executed the $15,000 bail bond to assure his appearance in connection with those charges. In the thirteen-month period between the filing of the indictment and July 1963, the case appeared on the calendar of the United States District Court for the Southern District of New York from fifteen to twenty times, with Hall present or his absence excused on each occasion.

At the trial, Jerome J. Londin, Hall's assigned attorney in both the stolen securities and bail-jumping cases was called to testify that on June 27, 1963, he was informed by the Assistant United States Attorney in charge of the stolen securities prosecution that thereafter Hall would have to be in court every day that his case was on the calendar. Mr.

Londin promptly relayed these instructions to Hall the very same day. The appellant thereafter appeared in court on June 27, June 28, and July 1, and on each occasion the prosecution was granted an adjournment. But, subsequently, Hall's attorney did not see his client so that he could specifically inform him that the Government required his presence again in court on July 8. Hall did not appear on that date or July 9, and on July 11, 1963, his bail was declared forfeited. All efforts by Mr. Londin and the bail bondsman to locate Hall proved unavailing.

The record further indicates that on October 16, 1963, an agent of the Federal Bureau of Investigation found and arrested Hall in Hawaii, where he was using the alias Clarence Young. Hall admitted his identity to the agent and, in a hearing before the United States Commissioner in Honolulu, also admitted that he was the person wanted in connection with the stolen securities charges. It appears, moreover, the agent learned that Hall had come to Hawaii with his wife and three children and that he had previously been to the islands in July 1963 using the name Lawrence Philips.

Two men who shared a Honolulu jail cell with appellant in the fall of 1963 also testified. One stated that Hall told him he was in trouble because of dealings with an elderly lady in New York who was in her 80's and that if she died, he would no longer have to fear criminal conviction. Hall also asked this witness "how long * * * it would take for a boat to * * * go to Vera Cruz, Mexico," and "how many miles out was the territorial limits for the Coast Guard." Appellant told his other cellmate that he had "jumped bail" and did not mind if he remained in jail for a

2. Hall was subsequently convicted of the underlying felony charge—three counts of transporting stolen securities in interstate commerce, 18 U.S.C. § 2314, and a fourth count of conspiring to do so, 18 U.S.C. § 371. He was sentenced to seven years' imprisonment on each of the three substantive counts and five years' imprisonment on the conspiracy count, to run concurrently with each other and with the bail-jumping sentence. An appeal from that judgment of conviction is currently pending.

year because by that time there would be no case against him if the old lady died.

On the basis of this evidence, the trial judge, after denying Hall's motions to dismiss at the conclusion of both the Government's proof and the entire case, submitted the case to the jury. When the jury returned a verdict of guilty, the court denied defense motions for a judgment of acquittal or, in the alternative, a new trial, and this appeal followed.

## I.

Hall contends that the trial judge erred in submitting the case to the jury on the concept that his failure to be present in court on all the days required was itself sufficient to violate the bail-jumping statute. He directs our attention to portions of the charge and the judge's answers to specific inquiries where, as appellant reads them, the jurors were repeatedly instructed to convict if they found that he had deliberately failed to appear in court when his presence was required. On the contrary, however, having examined the charge and supplemental answers in their entire context, we find no basis for his reading or validity to the claim of reversible error. The trial judge clearly stated the ultimate, controlling question: whether Hall willfully failed to surrender within thirty days of the forfeiture or failed to appear for some reason devoid of criminal willfulness.

Thus, the basic charge, in addition to quoting fully from both statute and indictment, accurately listed the elements of the bail-jumping offense. No problems were presented by the first three elements: that Hall was charged with a crime, was admitted to bail on that charge, and incurred a forfeiture of that bail. As to the fourth element—willful failure to surrender within thirty days— "the dispute," accurately pinpointed by the instructions, "is whether his failure was willful, whether he did it deliberately. Did he know what he was doing or was it for some innocent reason?" In explaining the issue of willfulness and

knowledge, the court posed a series of relevant questions: "Did he know he had to appear in this court? Did he willfully flee the jurisdiction to avoid trial here? Did he deliberately jump bail?" The jury's attention was quite properly directed to, though by no means solely focused on, Hall's knowledge of whether he had to appear in court on July 8, for the extent of his awareness of that obligation would be an element probative of willfulness. And, it is significant that appellant's competent and experienced trial counsel made no objection at the conclusion of the charge to the court's catalogue of the elements of the offense.

After deliberating for about an hour, the jury asked, "When the trial was adjourned on July 1 was the announcement made in open court in the presence of the defendant that the trial was to resume on July 8?" The judge, most likely believing the jurors were asking him to give his own recollection of the evidence, responded that it was for them to recollect the evidence and if they desired any testimony reread this would be done. But, he went on to indicate that "the question isn't whether he was here for trial, the question is whether he was here when he was required to be here," and thus any possible misapprehension that the defendant was required to appear at an actual trial was clarified. Since there was no further inquiry on this score, and we must view the evidence in a light most favorable to the Government, United States v. Robbins, 340 F.2d 684 (2 Cir. 1965); United States v. Tutino, 269 F.2d 488 (2 Cir. 1959), it seems reasonable to assume that the jury was satisfied with the testimony that Hall had been told by his assigned attorney, Mr. Londin, to appear for all calendar calls. The inquiry, indeed, showed an understanding of one of the important factors to be considered in determining whether Hall's actions were willful.

Some two hours later the jury returned with a further question: "The Court in its charge indicated 'Did he

know what he was doing or was there an innocent reason?' Does ignorance of the law constitute an innocent reason?" Responding to this indication that the jurors were experiencing the not uncommon layman's difficulty with the meaning of willfulness, the trial judge first recited that part of the statute specifying that the conduct punishable is the willful failure to surrender within thirty days after incurring a forfeiture. He then explained,

> Now, the reason the word willful is in there is so that no one will be convicted of a crime because of a mistake or because he does something innocently, not realizing what he was doing.

> There is no requirement that he has to know there is a law that makes it a crime to jump bail. All he has to do here to act willfully is to act freely, to act voluntarily, with a deliberate purpose of not being in this Courthouse when he is supposed to be here.

Hall's counsel then excepted to the failure to charge that the jury "must find that he deliberately did not surrender himself having known he had to surrender himself." The court replied in the jury's presence, "I think I made it clear * * * that he must know that he has to be here when he is required to be here and that, knowing that, he deliberately failed to appear for the purpose of evading a charge."

Contrary to Hall's contentions, we do not agree that the supplemental instructions explicitly or implicitly commanded the jury to return a guilty verdict on a mere finding that he deliberately absented himself from court on July 8, knowing he should have been there. We believe the trial judge properly answered the jury's final inquiry concerning the meaning of willfulness as used in the bail-jumping statute. In the course of a fairly lengthy response to the jury's last question, he referred, incidentally, to one of the essential statutory elements—the accused's willful failure to surrender within thirty days after forfeiture of the bail bond. The initial charge had completely and correctly explained this element. If, in discussing willfulness on several later occasions, the court on one of these allusions adopted a short form of reference which, under the circumstances, could not have been understood as ascribing a completely new meaning to the time within which Hall was required to surrender, we cannot fault it.

■ We are fully mindful of the "duty of special care" which all trial judges must exercise in framing last-minute instructions in response to jury queries. Bollenbach v. United States, 326 U.S. 607, 612, 66 S.Ct. 402, 90 L.Ed. 350 (1946). Indeed, we have written that a defendant may "justifiably complain when the court refuses to charge the correct law expressly, and thereby relies upon the jury's ability to infer it." United States v. Di Donato, 301 F.2d 383, 385 (2 Cir. 1962), cert. denied, 370 U.S. 917, 82 S.Ct. 1557, 8 L.Ed.2d 497 (1964). But this case differs substantially from Bollenbach, where the trial court gave a palpably erroneous instruction respecting the very matter that perplexed the jury. Here, the repetition on the last response to the jury of the short-hand phrase "when he is required to be here," without once again expressly focusing the jury's attention on the thirty-day grace period, was—in view of the repeated intonations of the relevant statutory language—not misleading or confusing, nor could it have been understood to mean that his failure to appear on July 8 *ipso facto* required a finding of guilt. Thus, we hold, as in Di Donato, supra, that the remote but highly unlikely possibility of ambiguity did not affect substantial rights and certainly was not prejudicial error.

## II.

■■ Nor is there any merit in the claim that the evidence was insufficient to prove that appellant willfully failed to surrender within thirty days after his bail was forfeited. Although his counsel below requested the court to charge that the jury must find that "he

deliberately did not surrender himself having known he had to surrender himself," Hall now insists, for the first time, that the prosecution was required to prove that he actually knew his bail was forfeited and that he had thirty days in which to surrender. But to require explicit proof that notice of the exact date of forfeiture was directly brought home to the bail-jumper would, in most instances, make a mockery of the statute and fly in the face of the applicable precedents, the legislative history of § 3146, and the practical realities of bail-jumping.

Appellant covers too much ground when he insists that the Government can only prove a willful violation by showing, in substance, a precise awareness of the statutory terms. A finding of willfulness could not possibly depend upon proof that the wrongdoer read the statute which proscribed his conduct. United States v. Carter, 311 F.2d 934, 943 (6 Cir.), cert. denied, Felice v. United States, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415 (1963). Judge Learned Hand once wrote, "The word 'wilful,' even in criminal statutes, means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." American Surety Co. of New York v. Sullivan, 7 F.2d 605, 606 (2 Cir. 1925).

The conclusion we have reached finds strong support in the series of cases which precipitated enactment of the bail-jumping statute in 1954 and thus warrant discussion. On June 4, 1951, the Supreme Court, in an important constitutional decision, affirmed the convictions of eleven prominent Communist Party leaders for conspiring to teach and advocate the violent overthrow of the Government in contravention of the Smith Act, 18 U.S.C. §§ 371, 2385. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). Shortly thereafter, on June 28, counsel for several of the defendants accepted service on behalf of all of a proposed order on mandate requiring the eleven to surrender personally on July 2 to begin serving their sentences, together with a notice stating that the proposed order would be presented to the District Court for settlement and signature on that date. In an appearance before the District Court on June 29, defense counsel gave assurances that "all of these defendants will be here" on July 2.

But, four of the eleven failed to surrender to the marshal in accordance with the court's order, signed on the designated date. The following day, after the absent defendants' bail bonds were declared forfeited, counsel told the court that he last saw them on June 29. The court asked, "Did you tell them at that time that their presence was required in court yesterday morning?" And the lawyer replied,

Definitely. As a matter of fact I advised that because I think I saw them among other defendants after I had been here on Friday [June 29], your Honor, and had made these motions [applications for orders to show cause why the sentences imposed should not be reduced or, as to one of the defendants, suspended because of illness], and therefore advised that they all should be present, and I was assured that they would be.

One defendant was apprehended in Texas four months later, another in California after more than twenty-six months, and two eventually surrendered in New York after more than four and one-half years had elapsed. All four were sentenced to additional prison terms under the District Court's power to punish for contempt of its authority, including disobedience to lawful orders. 18 U.S.C. § 401(3). Imposition of such punishment was upheld by the Supreme Court in Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958), and on three separate occasions by this court—twice before the Supreme Court decision, United States v. Hall, 198 F.2d 726, 34 A.L.R.2d 1088 (2 Cir. 1952), cert. denied, 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341 (1953); United States v. Thompson, 214 F.2d 545 (2

Cir.), cert. denied, 348 U.S. 841, 75 S.Ct. 48, 99 L.Ed. 663 (1954), and once thereafter, United States v. Thompson, 261 F.2d 809 (2 Cir. 1958). In each instance, the reviewing court found that the evidence established, beyond a reasonable doubt, that the fugitives knowingly disobeyed the surrender order, although that order was not signed until after the four had fled. The requirement of willfulness was satisfied despite lack of direct proof that the defendants actually knew the order was signed, for in those cases, as in Hall's, there was a multiple strand of cumulated circumstantial evidence to establish *mens rea.*

Mr. Justice Brennan's dissenting opinion in Green is particularly significant. In rejecting the majority's notion "that persons can be chargeable with knowledge of an order from notice that an application will be made for the order," 356 U.S. at 223, 78 S.Ct. at 663, he conceded that the evidence might have been sufficient to support convictions for violating § 3146, which was enacted in 1954 after, and partially in response to, the defendants' flights, but before the Court's opinion. He wrote,

"[B]ail jumping under § 3146 is proved merely by evidence that the accused willfully failed to surrender within thirty days after incurring a forfeiture of his bail. Much more, however, than evidence sustaining a conviction for bail jumping is necessary to sustain convictions for the contempts here charged of violating 18 U.S.C. § 401(3), 18 U.S.C.A. § 401(3), by willful and knowing disobedience of a single provision of the Order on Mandate of July 2, 1951. The indispensable element of that offense, to be proved beyond a reasonable doubt, * * * is that the defendants, who were not served with the order, in some other way obtained actual knowledge of its existence and command." 356 U.S. at 221, 78 S.Ct. at 662.

This distinction between the varying requirements of proof, although not de-

terminative for the majority in Green, is well-rooted in the legislative history of the bail-jumping statute, which was enacted to fill the void in the criminal law highlighted by the flouting conduct of the Dennis fugitives. The legislation "seeks to create a statutory deterrent which will minimize the possibility of bail forfeiture," 1954 U.S.Code Cong. & Adm.News, p. 3074, for unless bail-jumping were to be made a separate indictable offense, criminal defendants could buy their freedom by forfeiting their bonds, subject only to the risk that the Government would be able to meet the extremely onerous burden of proving criminally contumacious conduct. But Congress' purpose would be thwarted were we to require formal notice to the bail-jumper that his bond has been forfeited and that he has a thirty-day grace period in which to surrender. Obviously, the nature of the offense is such that it is hardly likely the bail-jumper will leave his forwarding address. To require the Government under these circumstances to adduce proof of a fugitive's knowledge of a forfeiture declaration would be to attribute to Congress a foolhardy judgment. It seems perfectly apparent to us that the thirty-day interval was intended as a restraint on the prosecutor for a reasonable period of time before commencing a prosecution. Provision for such a period of grace demonstrated wisdom and knowledge of every facet of the problem for it would serve to prevent an injustice in the case of one who, mistaken about the date his presence was required, appeared shortly after forfeiture; it would also afford some time for the bondsman to find and produce the defendant he bailed.

We hold, therefore, that the evidence was more than sufficient to prove, beyond a reasonable doubt, that Hall willfully failed to surrender within thirty days after his bail was forfeited. The issue essentially is whether knowledge and intent have been established circumstantially; and, since "the trier of fact has found for the government, the evidence must be viewed most favor-

ably to it, which includes \* \* \* the indulgence in all permissible inferences in its favor." United States v. Marchisio, 344 F.2d 653, 662 (2 Cir. April 9, 1965), quoting from United States v. Brown, 236 F.2d 403, 405 (2 Cir. 1956). Thus, it is clear that there was evidence that Hall signed the bail bond which provided for the consequences of forfeiture if he failed to appear; that he was informed by his lawyer that he must appear at each calendar call; and that he fled more than 5,000 miles, twice changing his name. All of these actions were compounded by the telling admissions to his Honolulu cellmates that he had jumped bail to await the death of the 80 year old witness. This weighty evidence more than sufficed to permit the jury to draw the reasonable inference that Hall failed to appear, knowing he had to do so, within thirty days after forfeiture. Indeed, there is no doubt in the light of the Government's overwhelming evidence that he left with the express purpose of concealing himself, knowing all the consequences, for at least the period until the witness' death became a reality.[3]

### III.

■ Finally, in a double-edged attack, Hall urges that reversible error was committed when his assigned counsel was called to testify he had informed appellant that his presence in court was required on every occasion when the stolen securities case appeared on the calendar. He claims that this testimony improperly divulged, over objection, a privileged, confidential attorney-client communication and that during the entire episode he was deprived of the effective assistance of counsel. Under the circumstances, however, we find no merit in either contention.

We find no invasion of the attorney-client privilege resulting from Mr. Londin's formal testimony that he conveyed to his client the Assistant United States Attorney's routine message that the accused's presence was required at each calendar call. The relaying of this message is not in the nature of a confidential communication. See 8 Wigmore, Evidence (McNaughton Rev. 1961), § 2292; United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass. 1950). Defense counsel served merely as a conduit for transmission of a message. The Assistant United States Attorney was responsible for notifying the accused, out on bail, as to when his presence was required in court. And, there could well have been a claim of violation of legal ethics if the Government counsel had conveyed this notice directly to the defendant, bypassing his counsel. Defendant's counsel had a duty to relay the instructions to his client in his capacity as an officer of the court, and this in no way was inconsistent with his obligation to his client.

■■ Moreover, the mere fact that counsel was called to testify does not without more establish a material interference with his effective conduct of the defense. Given the limited time and nature of his testimony, his reluctance to stipulate the matter sought to be elicited although such stipulation was solicited by the Government, the absence of any attempt to embarrass him or attack his credibility and the postponement of any objection until after trial, we can find no basis for reversible error on this score. See Cohen v. United States, 297 F.2d 760 (9 Cir.), cert. denied, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). In United States v. Guerra, 334 F.2d 138, 144–145, 146 n. 4 (2 Cir.), cert. denied, 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964), we faced an orthodox situation of denial of the right to counsel—the Government improperly interrogated a defendant after indictment but before counsel had been appointed—but declined to reverse because there was no showing of prejudice. The same principle applies here, a fortiori, where there was minimal

---

3. This aged witness in fact testified in the defendant's trial for transporting stolen securities in interstate commerce.

harm, if any, from counsel's brief testimony and his momentary withdrawal from the defendant's side to a point a few feet distant from him but nevertheless in his presence.

The Court wishes to take this opportunity to express both its gratitude and commendation for the excellent presentation by Louis A. Craco and Michael G. Marks, representing the defendant on this appeal by assignment.

Judgment of conviction affirmed.

HAYS, Circuit Judge (dissenting):

I dissent on the ground that the government failed to prove willfulness within the meaning of that term as it is used in 18 U.S.C. § 3146 (1964) ("willfully fails to surrender himself within thirty days following the date" of forfeiture of bail).

That the trial court was troubled about this problem is indicated not only by the jury's question as to willfulness but also by the judge's inquiry of government counsel after verdict, an inquiry which was never satisfactorily answered:

"Now what I wanted to know is what evidence was there in the record of the fact that his failure to surrender within 30 days from forfeiture of his bail was wilful, *and it seemed to me that implicit in that there must be evidence that he knew that his bail had been forfeited.*

"Now, how do you say there was such evidence of such knowledge in the record?" (Emphasis added.)

A defendant is, of course, subject to arrest and return to prison at any time after he has failed to appear and his bail has been revoked. The penalty provided by § 3146 is added only after there has been a willful failure to surrender for a period of more than thirty days after forfeiture of bail. A defendant could escape that additional penalty if he surrendered on the thirtieth day. However, to take advantage of the statutory grace period the defendant must know when that period begins and ends. If the defendant's failure to surrender were based upon a mistake as to when the thirty days ended, could he be said to have failed willfully to surrender himself within the grace period? Can his action be said to be willful when it is based upon ignorance?

Could the police, knowing that defendant was unaware that his bail had been forfeited, keep him under surveillance until the thirty day period had elapsed and then charge him with a violation of § 3146?

Could the police apprehend the defendant within the thirty day period, but after he had absconded to Hawaii and told his cell-mates of his purpose to jump bail, and charge him with willful failure to surrender within thirty days?

It seems to me that the statutory provision for the thirty day period is inextricably bound up with the requirement of willfulness, and that there can be no resolution of the problem except in terms which give the defendant the advantage of the grace period.

That this accords with the legislative purpose is indicated by the words of Representative Poff, who introduced into the House of Representatives the bill which became § 3146. Mr. Poff, speaking immediately before the adoption of the bill by the House, said:

"*Having knowledge of the existence of the bail-jumping statute and its penalties and having wilfully violated its terms,* [defendant] * * * has committed a crime even though he may actually be innocent on the original substantive charge." (Emphasis added.) [1]

Franco v. United States, 342 F.2d 918 (D.C.Cir.1964), appears to be the only authority in point. While the court in that case pointed out that "the statute does not state that the defendant must have knowledge that the forfeiture [of

---

1. 100 Cong.Rec. 11297 (1954).

In the Senate, the bill was referred to the Committee on the Judiciary, was reported back without amendment, and passed without debate. Id. at 11359, 12932, 14044.

bail] has taken place," the court went on to say:

"Since the purpose of the statute is to encourage persons on bail to meet the obligations in their bonds, notice to the person bailed of his obligation to appear should be sufficient. Notice of the revocation, in this case, informed appellant of his obligation to surrender himself. The terms of his bond clearly stated that he had such a duty, in the event of revocation. The information given by the agent also put him on inquiry about forfeiture of his bond." 342 F.2d at 921.

I would reverse the conviction.