### UNITED STATES of America
#### v.
### Arcelious MOSS, a/k/a Arcelious Morris, Appellant.
### No. 23091.

United States Court of Appeals, District of Columbia Circuit.

Argued June 22, 1970.

Decided Dec. 2, 1970.

Bazelon, Chief Judge, dissented and filed opinion.

Mr. Ward H. Oehmann, Washington, D. C. (appointed by this Court) for appellant.

Mr. Kenneth M. Robinson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and DAVIS*, Judge, United States Court of Claims.

PER CURIAM:

Arcelious Moss appeals from his conviction, after jury trial, of violating the Bail Reform Act of 1966, 18 U.S.C. §§ 3146, 3150, by wilfully failing to appear as required during the prosecution of a criminal case in the District of Columbia Court of General Sessions. Following his arrest on Saturday, September 2, 1967 (for being drunk in public, narcotics then being found on him), he was presented before the Court of General Sessions on Monday, September 4th, on a complaint of possessing narcotics. The case was continued until October 6, 1967, and he was released on his personal recognizance, conditioned on his reporting to the police precinct twice a week and appearing in the Court of General Sessions on October 6th. On that day the case was called, he did not answer, the judge revoked the personal bond, and issued a bench warrant for violation of the Bail Reform Act. Appellant was thereafter indicted and tried in the District Court for the latter offense.

The relevant evidence at the trial, other than appellant's, will be described below. Appellant testified that, knowing that he was to report on October 6th at 9:30 A.M. in a designated courtroom, he came into that room on that day at about 9:30 A.M. (before court had begun), and after awhile, before court started, went outside to the men's room to smoke for a brief time, returning shortly after the judge had taken the bench. He testified that he then waited in the courtroom for at least an hour and forty-five minutes but did not hear his case called. He did not see his appointed attorney in court. Leaving for lunch, he returned to the courthouse about 1:45 P.M., where he met his attorney in the corridor. He told the latter that the case had not been called, the attorney (according to appellant's testimony) then said he would check in the courtroom, returning after a short time to say that there had been a mixup about names,[1] appellant should go home, and the attorney would contact him later. Appellant thereupon went home and did nothing further about this problem until arrested some months later. Nor was he contacted by the attorney.

■ The prime challenge, on this appeal, is to the assistance given appellant by counsel, not counsel at the trial below but the lawyer appointed to represent him in General Sessions. At the first appearance there on September 4th the

---

* Sitting by designation pursuant to Title 28, U.S.Code Section 293(a).

1. There was testimony that appellant had used both the names Arcelious Moss and Arcelious Morris, and much of the trial concerned this aspect. We are satisfied from the record that no prejudice to appellant resulted from the use of both names in the indictment and by some of the witnesses, and no point is made of it on the appeal.

attorney was selected for him by the judge from among the lawyers who regularly practice in the criminal parts of that court. This attorney (not counsel appointed on this appeal or counsel who tried the case below) does not seem to have had any communication with appellant after that initial court appearance and prior to revocation of bond on October 6th. But whatever may have been the lawyer's professional obligations, it is clear that no prejudice resulted from any failure on his part to counsel or advise the appellant to appear. Appellant, a 40-year old man who had prior experience with the police and with criminal arrests, testified unequivocally that he knew he had to be in the courtroom on the day set (October 6th) at 9:30 A.M., and it is also apparent from the evidence that he was properly warned by the General Sessions judge on September 4th and told the consequences of nonappearance.

■■■ Another dereliction charged to the attorney is that he was absent from the courtroom on October 6th when the case was called, and in any event did not search for appellant in the building. The arresting officer, who was in court on that day, testified specifically that the attorney was there, but appellant testified that he had not seen the latter. The attorney's testimony (he was called by the defense) was that he did not actually remember whether or not he appeared, but it is plain from his entire examination that he believed he was present in accordance with his usual practice. On this record we cannot say that he was absent. As for his failure to search for appellant in the court building, in the circumstances that was not a breach of any professional obligation, especially since appellant knew of his duty to appear. Nor, obviously, was it ineffective assistance of counsel for the lawyer to have a dim recollection, as a witness, of the events of the day. He did remember encountering appellant in the corridor in the early afternoon, and of Moss's telling him that the case had not been called but he did not recall what he said or what else transpired.[2] This lack of memory was not a breach of any obligation owed to appellant.

■ The second challenge is to the sufficiency of the evidence. Since there is no attack upon the instructions and there was none at the trial, we must assume that the jury was properly charged on the elements of the crime. There was adequate proof of all components, including the calling of the case on October 6th and appellant's absence at that time. Appellant's knowledge of the requirements imposed upon him is also clear. The official records show the case was called, the judge's revocation of the bond, and the issuance of the arrest warrant. The police officer testified expressly that the case was called and appellant was not there, though his attorney was. As for appellant's willfulness, that presented a question, under the unchallenged instructions, for the jury on all the evidence, including appellant's own testimony which, of course, the jury could have disbelieved in whole or in part. See Franco v. United States, 119 U.S.App.D.C. 339, 342–343, 342 F.2d 918, 921–922 (1964).

■ Finally, appellant objects to the delay before his trial. The bench warrant for violation of the Bail Reform Act was issued on October 6, 1967, he was arrested on this warrant on February 15, 1968, the indictment was returned on May 13, 1968, and the trial began on March 4, 1969. This was, indeed, a long period, but in the particular circumstances we find no violation of constitutional rights. Of the four months prior to arrest on the bench warrant, appellant spent about half of the time in jail in connection with other offenses and, in any event, has failed to show any prejudice from the delayed arrest; no loss of evidence is shown and at the trial he himself was able to recall

---

2. The attorney was not asked specifically whether he told the defendant to go home nor whether he had checked on the report that the case had not been called.

all the relevant events. The thirteen-month delay between arrest and trial was accounted for, in largest part, by a change of attorneys for appellant, and by unsuccessful efforts by appellant to have the case dismissed for lack of prosecution, including four months taken up with an attempted interlocutory appeal to this court which was rejected. There was no substantial delay by the prosecution. Moreover, there is no adequate reason to infer prejudice. Appellant, as we have said, was able to recall the circumstances he thought pertinent; his General Sessions lawyer, it is true, appeared to remember little but trial counsel below failed to interview him before putting him on the stand, and it seems highly unlikely that, given the nature of his practice and his limited connection with appellant, he would have remembered much more, at an earlier trial, that would have been helpful to the defense. The sum of it is that the delay, for which the Government bears no substantial responsibility, does not appear as arbitrary, purposeful, oppressive or vexatious. See Smith v. United States, 118 U.S.App.D.C. 38, 41, 43, 331 F.2d 784, 787, 789 (1964); Evans v. United States, 130 U.S.App.D.C. 114, 116, 397 F.2d 675, 676, 677 (1968); Smith v. United States, 135 U.S.App.D.C. 284, 285–287, 418 F.2d 1120, 1121–1123 (1969).

Affirmed.

BAZELON, Chief Judge (dissenting):

Whether we are faced with an example of ineffective assistance of counsel is a close question for me in this case, but I would reverse the conviction on a simpler ground. The evidence was not sufficient to prove beyond a reasonable doubt appellant's wilfulness in failing to appear before the Court of General Sessions, as required by 18 U.S.C. §§ 3146, 3150.

Two versions of appellant's conduct were presented to the jury. The Government introduced evidence showing that appellant knew of his obligation to appear in court on the day in question, that the case was in fact called, that appellant did not answer, and that appellant approached no officer of the court to inquire about his case. There was conflicting testimony as to whether appellant's counsel answered the call. A police officer who knew appellant and was present in the courtroom testified that he did not see appellant that day.

Appellant's version is fairly summarized in the opinion of the court.

I do not see how either version of appellant's conduct permits the jury to find beyond a reasonable doubt that appellant *wilfully* failed to appear as required. The court cites Franco v. United States, 119 U.S.App.D.C. 339, 342 F. 2d 918 (1964), for the proposition that the evidence in this case presents a jury question. The Government's brief, in addition, cites United States v. Hall, 346 F.2d 875 (2d Cir.), cert. denied, 382 U. S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965), and United States v. Currier, 405 F.2d 1039 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969). All three cases upheld convictions under 18 U.S.C. § 3146 (1964),[1] the forerunner of the present § 3150.[2] All three cases persuade me that we must reverse this conviction.

---

1. "Whoever, having been admitted to bail for appearance before any United States commissioner or court of the United States, *incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such failure*, shall, if the bail was given in connection with a charge of felony or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both. * * * [Emphasis added.]

2. "Whoever, having been released pursuant to this chapter, *wilfully fails to appear before any court or judicial officer as required*, shall * * * incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both. * * * [Emphasis added.]

In *Franco*, appellant had left the District and was living under an assumed name in New Jersey, where he was finally arrested. He admitted knowing about revocation of his bond. The court said:

> The jury might well have concluded from [the] testimony and appellant's *evasive behavior* from April 30th to June 24th that he was * * * deliberately seeking to avoid a recognized legal obligation.[3] [Emphasis added.]

In *Hall*, appellant's attorney and the bail bondsman had each tried to find appellant after his bail had been revoked. Appellant was arrested in Hawaii, where he was living under an alias; there was testimony that he had told a third party that he had "jumped bail." In upholding the charge to the jury the court said the following:

> In explaining the issue of willfulness and knowledge, the [trial] court posed a series of relevant questions: "Did he know he had to appear in court? *Did he willfully flee the jurisdiction to avoid trial here? Did he deliberately jump bail?*"[4] [Emphasis added.]

In *Currier*, appellant ignored his attorney's notice, given the night before he was required to appear in court; his attorney secured a continuance until the following day (unlike the attorney in the case at hand) and notified appellant again, but once again appellant failed to appear. Appellant remained a fugitive for nine months, traveling from Maine to Florida and never staying in one place for more than a few days. He transferred the registration of his station wagon and lived under an alias. He admitted that he deliberately chose not to surrender himself, and that he knew he was being sought by the authorities.

Compare the evidence from which a jury could deduce wilfulness in these three cases with the evidence—on either version of appellant's conduct—in the case at hand. The Government has essentially done no more than prove appellant's failure to appear. There is no indication whatsoever that appellant attempted to flee the jurisdiction or to conceal himself from authorities. Appellant testified that after his abortive appearance in court he continued to report twice a week to the police station, as he had been required to do under the terms of his bond. This testimony was not controverted by the Government.

The crime appellant is charged with is not just "failure to appear," it is *"wilful* failure to appear." We cannot permit the jury to infer wilfulness from so meager a record as presented here.

---

3. 119 U.S.App.D.C. at 343, 342 F.2d at 922.

