Albert JENKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 79–563.

District of Columbia Court of Appeals.

Submitted March 25, 1980.

Decided May 22, 1980.

Stephen Horn, Washington, D. C., appointed by the court, was on brief for appellant.

Charles F. C. Ruff, U. S. Atty., Washington, D. C., and John A. Terry, Michael W. Farrell, Ronald Dixon, and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on brief for appellee.

Before NEWMAN, Chief Judge, HARRIS, Associate Judge, and PAIR, Associate Judge, Retired.

HARRIS, Associate Judge:

A jury convicted appellant of a willful failure to appear for trial in violation of D.C.Code 1973, § 23–1327. He argues on appeal that the trial judge committed prejudicial error in ruling that certain proffered defense testimony was inadmissible hearsay. We conclude that the hearsay ruling was erroneous, but that it was harmless. We therefore affirm.

### I

Appellant was scheduled to appear before the Superior Court as the defendant in a misdemeanor trial on April 18, 1978. He failed to appear on that date, and subsequently was charged with a violation of § 23–1327.

At trial, after the government had rested, appellant attempted to prove that his absence from court on April 18 had not been "willful" as required by § 23–1327. He testified that on April 18, he and his mother had gone to the information center at the Superior Court to find out in which courtroom his trial was to be held. Appellant then was asked by his counsel whether he had learned in which courtroom he was supposed to appear, and he answered that he had not. At that point, counsel asked to approach the bench, where the following colloquy took place:

[DEFENSE COUNSEL]: What he learned is that he was told by the person when he appeared that the case was dismissed.

THE COURT: We run into this every time when you have this kind of defense. It is strictly hearsay.

[DEFENSE COUNSEL]: I realize that, Your Honor. He and I together tried to identify the person in the computer center, but we were unsuccessful.

THE COURT: I understand that. They probably wouldn't remember anyway.

[DEFENSE COUNSEL]: He thinks he remembers one of the girls, but she said she had seen millions of them.

THE COURT: Right.

[DEFENSE COUNSEL]: If there is no objection, I will ask that question.

THE COURT: He's going to object.

[PROSECUTOR]: Now, I am going to object to that.

THE COURT: You can say then that you asked somebody up there what courtroom and as a result of what they told you what did he do.

[DEFENSE COUNSEL]: Okay. Thank you.

Following that conference, counsel elicited the following testimony from appellant:

Q. Mr. Jenkins, you talked to somebody in the computer or information center as you told us, is that right?

A. Yes.

Q. Without telling us what they said, tell us what you did as a result of what you learned? What did you do after talking to these people in the information center?

A. I turned around and walked out and went back home.

Q. You went back home?

A. Yes.

Appellant's mother, Vivian Jenkins, testified in her son's behalf. She stated that

she had accompanied him to court on April 18, and that she had sat in the information center while he checked to see where his trial was to be held. She further testified:

Q. Do you recall what they called that room you were in? Do you know—did you know the name of that room?

A. No, I don't. I know it is where you go to find the information.

Q. Find out information. Did you hear Albert talking with anybody?

A. Yes.

Q. Did you see him talking with anybody?

A. Yes.

Q. And did you see any computer terminals in that room?

A. Yes, I did.

Q. Now, what happened after the two of you went into the information room?

A. Well, he said come on let's go. He said they dropped the case. There is no charge against me. So we came on out and I went by the house and went to school.

## II

Appellant contends that the trial court erred in ruling that appellant's proffered testimony as to what he was told by the clerk at the information center was "strictly hearsay." The government effectively concedes the error, but urges that it was nevertheless harmless in light of Vivian Jenkins' testimony.

We agree that the exclusion of the proffered testimony was error; it did not constitute "hearsay." As one authority was stated:

Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. [McCormick, Evidence § 246 at 584 (2d ed. 1972).]

The proffered testimony was not offered "to show the truth of the matters asserted therein." Rather, it was offered to show that certain words had been said to appellant which could have given rise to a good faith and reasonable belief that his case had been dismissed—a story which, if believed by the jury, would constitute a valid defense to a charge of "willfully" failing to appear. See Robinson v. United States, D.C.App., 322 A.2d 271, 273 (1974); United States v. Moss, 141 U.S.App.D.C. 306, 308, 438 F.2d 147, 149 (1970); United States v. Dorman, 496 F.2d 438, 440 (4th Cir. 1974).

We agree with the government, however, that the error essentially was cured by the testimony of appellant's mother. After appellant had testified that he learned something at the information center that caused him to go home, his mother related to the jury what her son allegedly had been told by the person operating a computer terminal. Mrs. Jenkins stated: "Well, he said come on let's go. He said they dropped the case. There is no charge against me."

Moreover, in his closing argument, appellant's trial counsel made full use of Mrs. Jenkins' testimony. He argued in part:

Now, what exactly does it mean he didn't appear in court? We have uncontradicted testimony that Mr. Jenkins did in fact appear in a court building. By his own testimony he did not go to a courtroom, a specific courtroom. He didn't tell you why. His mother told you why. Do you recall his mother's testimony? She said they were told the case had been dismissed.

\*　　\*　　\*　　\*　　\*　　\*

He learned something in the information center that caused him to go home. His mother told you what that something was. Is it so unreasonable that he got that kind of result?

\*　　\*　　\*　　\*　　\*　　\*

Now, that testimony that you heard from the [appellant] is uncontradicted to the effect that [appellant] came down here that day. His mother's testimony is uncontradicted.

\*　　\*　　\*　　\*　　\*　　\*

His failure to appear on the basis of the evidence is because they were told the

case was dismissed. The information was gotten out of a computer. Do computers lie? I don't think. Do they always state things with accuracy? As far as we know they do.

Considering all of the relevant circumstances, we conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

*Affirmed.*