**UNITED STATES of America**

v.

**Russell RIVERS.**

**Crim. No. 75–220.**

United States District Court, E. D. Pennsylvania.

Dec. 18, 1975.

710

Robert E. J. Curran, U. S. Atty., Kenneth Dixon, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Joseph F. Keener, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendant was convicted by a jury of knowingly and intentionally distributing a controlled substance (heroin) in violation of 21 U.S.C. § 841(a). Presently before the Court are defendant's motions for judgment of acquittal or a new trial, filed pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.

Various grounds were originally asserted in support of these motions. Only two, however, are now pressed by defendant. These are (1) that the failure of the Government to produce the informant involved in the case was a denial of due process of law, and (2) that the refusal of the Court to give a "missing witness" charge to the jury, as requested by defendant, was erroneous.

For the reasons stated below, defendant's motions will be denied.[1]

*Absence of Informant at Trial*

Defendant's present counsel was appointed by the Court on July 24, 1975. On July 30, 1975, defense counsel met with Mr. Kenneth Dixon, the Assistant United States Attorney assigned to this case, and inquired as to the name of the informant involved in the case and whether he would be produced at trial. Mr. Dixon stated that he did not know the name of the informant, but he understood that Government agents had been in touch with the informant and that he could be produced. Approximately a week to ten days later, Mr. Dixon telephoned defense counsel and identified the informant by name. During telephone conversations on August 6, 1975, and August 13, 1975, Mr. Dixon told defense counsel that the informant would be produced at trial.

On August 19, 1975, defense counsel wrote a letter to Mr. Dixon requesting that the Government have the informant present at defendant's trial, which was scheduled to begin on September 3, 1975. Defense counsel also asked to be advised if the Government was "unwilling" to have the informant present. (Exhibit C–1.) On August 22, 1975, defense counsel received his copy of a letter the Court had mailed to Mr. Dixon the previous day. That letter (Exhibit C–2) expressed the Court's position that if the Government expected to have the informant present at defendant's trial, defense counsel should be advised promptly. If that was not the Government's expectation, the Court considered it the Government's obligation to advise defense counsel of the informant's name and last known address so that counsel could, if he so desired, take steps to assure the informant's presence at trial. On August 29, 1975, and September 2, 1975, Mr. Dixon assured defense counsel that the informant would be present at the trial. Mr. Dixon stated that the Government did not intend to call the informer as its witness, but nevertheless would produce him.

■ On September 3, 1975, the day the trial began, counsel for the Government learned for the first time that the informant could not be located [N.T. 1–3].[2] Agent Davis of the Drug Enforcement Administration ("DEA") testified that, prior to trial, the informant had told him and another agent that he was reluctant to testify in defendant's case [N.T. 2–12, 2–14]. However, Agent Davis also testified that he was in contact with the informant up until the day before the trial, knew the informant's whereabouts at that time, [N.T. 2–12, 3–52], had been told that the informant would appear the day of trial and had always found the informant to be reliable about making appearances in the past [N.T. 2–10, 2–14 to 2–15]. At no time prior to trial was defense counsel advised that the informant felt any hesitation about appearing in court concerning this case. All parties had assumed that the informant would be in court [N.T. 1–4]. As a result, defense counsel did not obtain the informant's address or make any attempt to have a subpoena served upon him until the trial was already under way [N.T. 1–3, 2–86, 3–55].

Prior to the selection of the jury, a side-bar conference was held off the

---

1. The Court notes that neither of the grounds presently asserted by defendant would serve as a proper basis for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. The sole ground upon which a judgment of acquittal should be based is a successful challenge to the sufficiency of the Government's evidence. *United States v. Jones,* 322 F.Supp. 1110, 1112 (E.D.Pa. 1971).

2. We consider any on-the-record statements made by counsel during the course of the trial concerning this issue of the production of the informer to be judicial admissions binding on their clients. These statements are unequivocal, concern the management of the litigation and deal with matters of fact which otherwise would require evidentiary proof. *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir. 1972); *Taylor v. Allis-Chalmers Manufacturing Co.,* 320 F.Supp. 1381, 1385 (E.D.Pa.1969), *aff'd per curiam,* 436 F.2d 416 (3d Cir. 1970).

record concerning the availability of the informant. It was agreed that the Government would use its best efforts to assure the presence of the informant in court [N.T. 1–3, 2–22]. According to the testimony of DEA Agent Davis, the following efforts were made to locate the informant: Agent Davis made one attempt to contact the informant by telephone on September 3, 1975. He was unsuccessful. Agent D'Amico spoke to the informant twice on that day by telephone, and Agent Williams had one telephone conversation with him. Two of these conversations were initiated by the informant. The informant told Agents D'Amico and Williams that he would be in court that afternoon. The agents considered the informant reliable and made no efforts to meet with him in person [N.T. 2–10 to 2–15]. The informant did not appear on September 3. On the morning of September 4, 1975, Agent Davis went to the informant's aunt's house, which was his last known address. He was not there, but a message was left with his aunt that he should contact Agent Davis. Agent Davis then went to the residence of the informant's mother. He was not at that location either and, after staying in the general area for 45 minutes hoping to see him on the street, Agent Davis confirmed by telephone that the informant still had not been to his mother's home. Again, a message was left for the informant that he should contact Agent Davis [N.T. 2–10, 2–84 to 2–85, 3–52 to 3–53]. There was no further contact with the informant. Defense counsel's attempt to have a subpoena served upon the informant was unsuccessful. The informant never appeared at the trial.

 With this factual background in mind, an examination of the applicable law reveals that defendant was not, under these circumstances, denied his right to due process of law. In *United States v. Williams*, 488 F.2d 788, 790 (10th Cir. 1973), the court stated:

As a general rule in cases of this kind, the government must identify an informant who participates with under-cover agents in transactions which are for the purpose of obtaining evidence of crimes and whose testimony might be relevant to the defense. [Citations omitted.] In addition to requiring the disclosure of the informant's identity, the trend of the decisions has been, upon demand of the defendant, to require the prosecution to produce the informer at the time of trial. If the informer is not available, it is incumbent upon the government to show reasonable diligence in its effort to produce him. [Citations omitted.]

The name of the informant in the present case was known to defendant almost a full month prior to the trial. Furthermore, the Court directed the Government to produce him at the trial. The Government maintained personal contact with the informant until the day the trial began. The Court stated during the trial that it believed the Government agents were making a good faith effort to locate and produce the informant [N.T. 2–18, 2–19, 2–22]. Reflection on these events since that time has not altered our view that the Government clearly satisfied its obligation to use reasonable diligence in its effort to make the informant available for defendant's use at trial. *See United States v. Jones,* 492 F.2d 239, 241 (3d Cir. 1974).

The Court does not hold in this case that the exercise of due diligence to locate an informant will excuse every failure by the Government to produce the informant at trial. We recognize that in an appropriate case, if the facts disclosed that the accused could not obtain a fair trial without the presence of an informant, the Government's failure to produce that informant could be a denial of due process. *United States v. Williams, supra,* 488 F.2d at 790. However, this is not such a case. There was nothing in the Government's files to indicate that this informant would, or could, offer any exculpatory evidence concerning defendant. As in the *Williams* case, the evidence showed that the informant's activity was limited to putting the Government agents in touch

with defendant. While he was present at the scene of the crime, he took no active part in the transaction that resulted from that meeting. The jury obviously credited the testimony of the Government's witnesses that the drug transaction took place and rejected that of defendant and his alibi witnesses that the transaction had not occurred at all. The Court does not believe, in light of the facts in this case, that the failure to produce the informant at trial constituted a denial of defendant's right to due process of law. *See United States v. Super,* 492 F.2d 319 (2d Cir.), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 115 (1974).

*Missing Witness Charge*

 Defendant argues that the Court erred in refusing to give his proposed "missing witness" charge[3] to the jury. The inference suggested by the charge is applicable to situations in which "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to do so. *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). Even in such a situation, it is left to the sound judgment of the trial court to decide whether the instruction should be given. *Burgess v. United States,* 142 U.S.App.D.C. 198, 440 F.2d 226, 234 n.11, 237 (1970).

Unlike *Burgess, supra* at 232, there was a break in the association between the informant and the Government in this case at the time the trial began. The Court's refusal to give the charge was based upon its finding that the informant was equally unavailable to both parties and, therefore, not peculiarly within the power of the Government to produce. [*See* N.T. 3–91.] The Court did permit defense counsel to argue to

the jury concerning the absence of the informant [N.T. 3–92]. Under all the circumstances, we do not believe it was erroneous to refuse to give the requested instruction. *United States v. Williams,* 496 F.2d 378, 383 (1st Cir. 1974); *United States v. Ferguson,* 162 U.S.App.D.C. 268, 498 F.2d 1001, 1008–1009, *cert. denied,* 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974).

An appropriate Order will be entered.

---

**3.** The requested instruction read as follows:

"If you believe that the informer was more accessible to the prosecution than he was to the defendant, failure of the prosecution to call the informer as a witness gives rise to an inference that his testimony would be unfavorable to the prosecution. If you find that the witness was equally available to both parties no such inference should be drawn. Bear in mind that the defendant has no burden of calling any witnesses or any particular witnesses."